## JACKSON v. JACKSON.

1. A direction that a legatee shall have the guardianship and tuition of after-born children is a provision for them within the act of 1833, 8th April, it being a trust created for the purpose of maintenance and education.
2. And it seems this would be so, even had the children no pecuniary benefit from the will.

*Feb.* 4.—In September, 1833, Jackson being then married, but having no children, made his will, giving all his estate to his wife, and in case he should leave any children, he gave the tuition and guardianship of them to his wife, who survived him, during their minority. Testator left children, and real estate in another state, and personalty here, and the question was, whether the 15th section of the act, 8th April, 1833, produced an intestacy as to these children.

*J. R. Ingersoll*, for the children, plaintiffs, submitted a written argument, of which the following is believed to be a correct outline; its great length prevented its insertion entire :—

The question is, whether testator died intestate as to these children, under 15th section of the act. Under that there are several requisites: 1. A will. 2. Subsequent marriage or birth of children. 3. Death; children surviving. 4. Such children unprovided for. The three first are embraced in the case stated. The fourth depends on the construction of the words " not provided for in such will." Do these require a provision in money or property, or such foresight as proves they were not forgotten? If the former is unnecessary, the will is good, and such is contended for here. The words are broad enough, for children are provided for by appointment of a guardian; which the law recognises, and this is perhaps as wise a provision as any, and there is no necessity to restrict the words of the act. The intention was to put after-born children on an equality with the others, on the presumption they were not in the mind of testator. If so, then bequests are in effect contingent to either classes of children, and he may omit either, or give directions without property. The only distinction is, that a mere omission will not disinherit after-born children. To require pecuniary gifts would be contrary to the whole tenor of the act, for negative words are not required in cases of living children. The opposite construction would be inconvenient—for what amount will be a sufficient provision under the act, and must the condition and circumstances be considered? If a nominal provision would do, it would be nothing more than is here contended for, to wit, as tending to show the child was considered by

testator. So the state of his affairs might render the gift an uncertain one. Must his testacy remain unsettled during all that period? The tendency of modern legislation has been to extend the right. The construction in this case, contrary to what is here contended, would be opposed to it. It would be opposed to all the reasoning and analogy in English precedents; for, though it is true they have not a positive statute, they are governed by the intention of the testator, to effectuate which was the object of this act. In fact it is nothing but the doctrine of implied revocation—by a mere republication, he may defeat the operation of the principle; and this shows the intention, express or implied, is to govern. It is expressed, when he provides according to the true meaning of that term. It is implied, when he omits to provide for them, and to make any testamentary arrangements after they are born.

Not omitting is as conclusive one way as omission is the other. The elaborate opinion of Sir John Nicholl, in Johnston v. Johnston, 1 Phil. 447, contains the cases: the conclusion is, that the birth of children, with other circumstances, revokes the will of a married man. It is declared to rest on a believed intention, inferred from a change of circumstances.

There is no distinction between our own act and the rule, as laid down by him, page 150, 1 Eccl. R. Where no intention is declared, there is room for presumption; but if declared, with a view to circumstances, there is no such room. Circumstances cannot alter the statute, but the reasons for enacting it are valuable guides in the construction of it. Hence, as the intention of the testator was the reason, a construction defeating it is not lightly to be adopted. It is necessary to inquire whether the words of the act have any technical meaning which requires a pecuniary provision. This depends on the use, by courts and legislatures, of the terms. Some decisions rely less on the intention for implied revocation. Lancashire v. Lancashire, 5 T. R. 58, Lord Kenyon puts it as a tacit condition originally annexed to the will. If this be so, an expressed declaration to the contrary would prevail. Brown v. Thompson, 1 Eq. Ca. Abr. 413, was the case of a man marrying his devisee, and leaving her enceinte; the Lord Keeper considered the wife and child provided for. Earl of Ilchester's case, 7 Ves. 348. Provision by settlement was considered sufficient.

The rule is derived from the civil law. In lib. vi. tit. xxix. De Posthumio, it is held, intestacy occurs where no mention is made of the posthumous children. Similar language is used in our act of 1748. If the children are not named, &c. The act of 1794 substituted the present words. The latter is more comprehensive, for they may be provided for without being named, and there might have been doubt on

the former, as they could not strictly be named. "Provided for" sometimes refers to a change of circumstances, as in Talbot *v.* Talbot, 1 Haz. 705, "if the change has been provided for, it will not work a revocation." A guardian appointed is a providing for. And the act will be construed according to the settled construction of the courts, and not more narrowly.

In Emerson *v.* Boville, 1 Philm. 342, it is said some recognition, or something to show the intention, is necessary to prevent an implied revocation. Tomlinson *v.* Tomlinson, 1 Ashmead, 227: Judge King, referring to the Roman law, says, a birth of a child unnoticed in a previous will annuls it. These cases show the tenor of authority will authorize this construction. Other reasons already suggested tend to the same result. The circumstances were foreseen; the will, therefore, is not revoked by implication, but remains in full force.

*March* 4. Rogers, J.—We are of opinion the defendant is entitled to judgment on the case stated. The provisions of the will, for the benefit of the children, satisfy the words and spirit of the act of the 8th April, 1833, which, among other things, provides, that when any person shall make his last will and testament, and afterwards have a child, or children, *not provided for in such will,* he shall, &c., be deemed and construed to die intestate. We view the clause relating to the children, as a bequest for their benefit and support; for, in addition to the reasons urged with so much force by the defendant's counsel, which we adopt, we consider the devise in their favour a trust for their benefit, which a court of equity will, if necessary, enforce. If so, it is a provision for after-born children, and, as such, falls within the words as well as the spirit of the act. Although a bequest often assumes the form of a recommendation, it is not less obligatory on that account—a principle explained at some length in Pennock's case. (Coates' Appeal, reported antè, 129.)

The will clearly evinces the great confidence reposed by the testator in his wife and principal legatee—a confidence or trust which there is no danger will be abused, except in the improbable contingency of an ill-advised and unfortunate second marriage. He not only directs that his wife, executor, and principal devisee, shall have the guardianship of his after-born children, but that she shall have charge of their tuition also. This is a trust which she cannot assume, or throw off, if she were so unnaturally disposed, at pleasure. If she accepts the benefit, she must also bear the burden imposed by the will. Coupled with the other parts of the will, this intention, and the intention of the testator is a cardinal rule of construction, is mani-

fest. Viewed in an enlarged and comprehensive sense, it contains an injunction obligatory on the legatee, to provide an education suitable to their situation in life, and an adequate support during minority. The just expectations of the testator she has no right to disappoint, for, by the acceptance of the bequest, she incurs not only a moral but a legal obligation, which the court, if necessary, will find means to enforce. In the interpretation of the language of wills, courts of equity have created implied or constructive trusts, from mere recommendatory and precatory words of the testator. Thus recommendation, confidence, hope, wish, and desire, have been construed into positive and peremptory commands. But in this devise there is something more, I take it, than a mere recommendation.

After leaving his wife his whole estate, the testator emphatically says: "And in case I shall leave any child or children living at the time of my decease, *my will is*, and I do hereby appoint, that my said dearly beloved wife Louisa shall have the *tuition* and guardianship of such child or children, during his, her, or their minority. Although expressed in mild language, such as an affectionate husband thought it decent and proper to use towards a beloved wife; yet it is equally positive and imperative as if it assumed the ungracious form of a peremptory command. The moral obligation of a parent to provide for the sustenance and education of his children, and his parental affection, add force to this view of the question: for we cannot readily admit that a parent intends to leave his children at the mercy and caprice of any person whatever. The inclination of my mind, in all similar cases, is to construe words of a recommendatory or precatory character into express and positive commands. The bequest also possesses all the other requisites to constitute a trust. In respect to the certainty of the description of objects, or persons, in a recommendatory trust even, it is not indispensable that the persons should be described by their names. After-born sons, daughters, or children, is a sufficient description; for otherwise, a trust, by implication, could not be raised in their favour—a distinction between them and children in esse, the reason of which it would be difficult to perceive. There is also a certainty in the description of the property, a benefit to which the children are entitled. The maxim, Id est certum, quod certum reddi potest, properly applies. The court, if necessary, will fix the amount which may be required for maintenance and education of the children. The intention of the testator is the controlling rule in the construction of all wills; and, in my judgment, the reasons of which have been fully expressed in a recent case—Pennock's case—the rules adopted by the courts of equity are eminently calculated to carry into effect that

intention, and ought to be upheld and enforced by the courts.   As to the measure of relief, that must depend on a variety of circumstances; the amount of the property bequeathed; the station in life of the family; and other matters, of which the court will be fully competent to judge.

Judgment for the defendant.